UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
GLOUCESTER FISH EXCHANGE, INC.,         )
                                        )
        Plaintiff,                      )
                                        )
                v.                      )   Civil Action No. 1:17-cv-10570-MLW
                                        )
WILBUR ROSS, SECRETARY OF               )
COMMERCE, UNITED STATES                 )
DEPARTMENT OF COMMERCE/                 )
NATIONAL OCEANIC AND                    )
ATMOSPHERIC ADMINISTRATION,             )
                                        )
        Defendant.                      )
                                        )
_____)

**REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO AFFIRM FINAL
DECISION DENYING PLAINTIFF'S APPLICATION FOR ATTORNEY'S
<u>FEES AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

February 26, 2020

DEIN, U.S.M.J.

## I.    <u>INTRODUCTION</u>

Plaintiff Gloucester Fish Exchange ("GFX") seeks judicial review of the Department of

Commerce's final decision ("FAD") denying its application under the Equal Access to Justice Act

("EAJA") for attorney's fees and costs.  The EAJA application at issue arises from attorney's fees

and costs incurred in connection with the representation of GFX in two National Oceanic and

Atmospheric Administration ("NOAA") enforcement proceedings.  These proceedings were

resolved on March 1, 2010 in a global settlement agreement (the "Settlement Agreement")

which included, among other provisions, civil penalties, permit sanctions, a waiver of attorney's fees, and a release of all claims against NOAA.

Thereafter, the Department of Commerce conducted an independent investigation of NOAA's enforcement practices and focused on a number of NOAA cases, including the two GFX enforcement proceedings. The DOC appointed Retired U.S. Magistrate Judge Charles B. Swartwood III as a Special Master to conduct a further investigation of a number of cases, including the two GFX proceedings at issue here. Judge Swartwood issued a Report and Recommendation ("R&R") detailing his findings and making recommendations as to whether further actions should be taken in each of the cases. (See Docket No. 12-11; AR 184-422).[1] As a result of this investigation, all civil penalties collected from GFX under the Settlement Agreement were remitted, and the number of days of permit sanctions days were reduced from those agreed upon in the Settlement Agreement. GFX contends that as a result of these orders, it is the "prevailing party" under the EAJA and is entitled to recover its attorney's fees and expenses. GFX argues further that the Settlement Agreement should be declared null and void. The defendants (collectively "NOAA") raise numerous objections to the request for fees and expenses including, without limitation, that GFX does not qualify as a "prevailing party" because the order remitting the penalties was not issued in conjunction with an "adversary proceeding," as required by the EAJA, that the issue whether the Settlement Agreement should be declared void due to economic coercion and duress is not properly before the court, and that the request for fees and costs is untimely.

---

[1] The Administrative Record ("AR") has been filed as Docket Entries 12-15. Citations will be to the AR page unless otherwise indicated.

This matter is presently before the court on "Defendant's Motion to Affirm Final Decision Denying Plaintiff's Application for Attorney's Fees, or, in the Alternative, for Remand" and "Plaintiff [GFX]'s Motion for Summary Judgment." (Docket Nos. 18, 20). After careful consideration of the parties' written submissions, the record, and the parties' oral arguments, this court recommends to the District Judge to whom this case is assigned that the FAD denying the EAJA application be affirmed. Therefore, defendant's motion to affirm (Docket No. 18) should be **ALLOWED**, and plaintiff's motion for summary judgment (Docket No. 20) should be **DENIED**.

## II.  <u>STATUTORY BACKGROUND</u>

### <u>The Magnuson-Stevens Fishery Conservation and Management Act</u>

The Magnuson-Stevens Fishery Conservation and Management Act ("MSA") governs marine fisheries management in United States federal waters. 16 U.S.C. § 1801, <u>et seq.</u> It provides for a national program to conserve and manage fishery resources in order to "prevent overfishing, to rebuild overfished stocks, to insure conservation, to facilitate long-term protection of essential fish habitats, and to realize the full potential of the Nation's fishery resources." 16 U.S.C. § 1801(a)(6). If a party is found to have violated the MSA, the Secretary may assess civil penalties and permit sanctions. 16 U.S.C. § 1858 (commonly known as "Section 308"). The MSA outlines the procedure for assessing and reviewing civil penalties and considers separately the availability and procedure for imposing permit sanctions. <u>See</u> 16 U.S.C. § 1858(a), (b), (g).

Section 308(a) of the MSA provides that any person who is found, after notice and an opportunity for a hearing under the Administrative Procedure Act ("APA") § 554, to have

committed an act prohibited under the MSA shall be liable to the United States for a civil penalty, not to exceed $100,000 for each violation.  16 U.S.C. § 1858(a); 5 U.S.C. § 554.  As detailed below, such a hearing is held before an Administrative Law Judge ("ALJ").  In addition to the civil penalty, the Act provides that the Secretary may revoke, suspend, deny, or impose conditions on permits held by violators.  16 U.S.C. § 1858(g)(1).  A party ordered to pay a civil penalty or serve a permit sanction (with exceptions not relevant here) may obtain a review of the ALJ's decision by filing a complaint against the Secretary in the district court within thirty days of the date of the order.  16 U.S.C. § 1858(b).  The court shall set aside the findings and order of the Secretary if it is not supported by substantial evidence, as provided in 5 U.S.C. § 706(2) of the APA.  Id.

The statute also provides that"[t]he Secretary may compromise, modify, or remit, with or without conditions, any civil penalty which is subject to imposition or which has been imposed under this section."  16 U.S.C. § 1858(e).  Such authority is not limited to the confines of an administrative hearing.  No such comparable authority is given to the Secretary with respect to permit sanctions.

The Section 554 proceedings referred to in Section 308(a) are conducted in accordance with 15 C.F.R. Part 904.  See 15 C.F.R. § 904.1(a), (c), (d).  The regulations provide that NOAA itself may also, in its sole discretion, "compromise, modify, remit, or mitigate, with or without conditions, any civil penalty assessed, or which is subject to assessment."  15 C.F.R. § 904.106(a).  That authority may be exercised either on the initiative of the agency or in response to a specific request.  15 C.F.R. § 904.106(b).  However, "[n]either the existence of the compromise authority of NOAA under this section nor NOAA's exercise thereof at any time

[4]

changes the date upon which a NOVA [Notice of Violation and Assessment] becomes final." 15 C.F.R. § 904.106(c).

As detailed more fully below, two investigations against GFX resulted in the imposition of both civil penalties and permit sanctions. Although they were at different stages of the appeals process, both investigations were settled together in a single Settlement Agreement.

### Equal Access to Justice Act

The EAJA "departs from the general rule that each party to a lawsuit pays his or her own legal fees" and requires the federal government pay legal fees depending on the resolution of the lawsuit. Scarborough v. Principi, 541 U.S. 401, 404, 124 S. Ct. 1856, 1860, 158 L. Ed. 2d 674 (2004). It "'ensure[s] that certain individuals, partnerships, corporations . . . or other organizations will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved.'" Id. at 407, 124 S. Ct. at 1861 (quoting H.R. Rep. No. 99-120, p.4). The EAJA, 28 U.S.C. § 2412, "is made applicable to administrative adjudications through section 504 of the [APA.]" Aageson Grain & Cattle v. U.S. Dep't of Agric., 500 F.3d 1038, 1041 (9th Cir. 2007). See also 15 C.F.R. §§ 18.1, 18.4 (applying § 504 to Department of Commerce proceedings that assess civil penalties or permit sanctions issued by NOAA).

### The EAJA Fee Application Process

The EAJA requires the case forming the basis for the EAJA application be an "adversary adjudication" defined, relevant to this case, as "an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise[.]" 5 U.S.C. § 504(b)(1)(C). The party seeking legal fees must file with the agency their EAJA application

"within thirty days of a final disposition in the adversary adjudication."  5 U.S.C. § 504(a)(2).

The Department of Commerce defines final disposition as, "the date on which a decision or

order disposing of the merits of the proceeding or any other complete resolution of the

proceeding, such as a settlement or voluntary dismissal, becomes final and unappealable, both

within the agency and to the courts."  15 C.F.R. § 18.14.

     The adversary adjudication must have been resolved in one of two ways to require that

an agency pay legal fees.  First, under § 504(a)(1), the agency,

> shall award, to a prevailing party other than the United States, fees and other
> expenses incurred by that party in connection with that proceeding, unless the
> adjudicative officer of the agency finds that the position of the agency was
> substantially justified or that special circumstances make an award unjust.
> Whether or not the position of the agency was substantially justified shall be
> determined on the basis of the administrative record, as a whole, which is made
> in the adversary adjudication for which fees and other expenses are sought.

5 U.S.C. § 504(a)(1).  Alternately, § 504(a)(4) applies when the EAJA applicant is not a

"prevailing party."  See S.E.C. v. Berlacher, No. 07-3800, 2012 WL 512201, at *6 (E.D. Pa. Feb.

15, 2012)(citing Park Manor, Ltd. v. U.S. Dep't of Health & Human Servs., 495 F.3d 433, 437 (7th

Cir. 2007) (parenthetical omitted)).  Under § 504(a)(4), a party may seek fees if the agency

conducts an "adversary adjudication arising from an agency action to enforce a party's

compliance with a statutory or regulatory requirement, [and] the demand by the agency is

substantially in excess of the decision of the adjudicative officer and is unreasonable when

compared with such decision[.]"  5 U.S.C. § 504(a)(4).  The adjudicative officer must reimburse a

party's legal fees, "unless the party has committed a willful violation of law or otherwise acted

in bad faith, or special circumstances make an award unjust."  Id.  In the instant case, GFX

contends that it is entitled to legal fees under both §§ 504(a)(1) & (4).

The adjudicative officer who presided at the adversary adjudication issues the initial decision granting or denying the EAJA application.  15 C.F.R. §§ 18.2, 18.21.  Either party can then file a petition for review with the Office of the General Counsel ("OGC").  15 C.F.R. § 18.22.  The General Counsel has discretion whether to review the petition.  Id.  If the General Counsel reviews the petition, the General Counsel can either issue a final decision or remand the application back to the adjudicative officer for further proceedings.  Id.

A party, except the United States, unhappy with the agency's final result, may appeal the decision to the court of the United States which had jurisdiction to review the underlying case.  5 U.S.C. § 504(c)(2); 15 C.F.R. § 18.23.

> The court's determination on any appeal . . . shall be based solely on the factual record made before the agency. The court may modify the determination of fees and other expenses only if the court finds that the failure to make an award of fees and other expenses, or the calculation of the amount of the award, was unsupported by substantial evidence.

5 U.S.C. § 504(c)(2).  In the instant case the OGC issued a FAD denying the request for fees on March 6, 2017.  (FAD at 15; AR 1299).

### III.  STATEMENT OF FACTS

#### Enforcement Actions

The EAJA fee applications arise from two separate enforcement actions.  The first was heard by ALJ Devine, and the second by ALJ Brudzinski.  The description of the proceedings is taken from the Special Master's R&R[2] and the FAD.

---

[2] In the R&R, GFX is referred to as Gloucester Seafood Display Auction, or GSDA.  GFX was the owner of GSDA.  (FAD at 1 n. 1, AR 1285 n.1).  For convenience, all references herein will be to GFX.

1. <u>ALJ Devine Proceeding</u>

GFX is a fish display auction business located in Gloucester, Massachusetts, where fishermen deliver and display their product for sale directly to their customers.  (R&R at 29-30, AR 215-16).  The first enforcement action ("ALJ Devine case") stems from a Notice of Violation Assessment (NOVA) and a Notice of Permit Sanction (NOPS) issued on March 7, 2005.  (R&R at 35, AR 221).  Therein, NOAA assessed a civil penalty in the amount of $120,000 and suspended GFX's dealer permit for ninety (90) days due to the company's allegedly false reporting of the size of the catch that it had offloaded on February 11, 2004.  (R&R at 34-35; AR 220-21).  After investigation, it was determined that GFX had reported 500 pounds of fish instead of the accurate count of 575 pounds.  (<u>Id.</u>).  NOAA justified the large amount of the fine on the fact that in 2002 GFX had been issued a 24 count NOVA due to inaccurate reporting of catches by an employee over the course of several months.  (R&R 33-35; AR 219-221).  That NOVA had been settled on September 11, 2003.  (R&R at 34; AR 220).  NOAA therefore considered the March 7, 2005 sanction as GFX's 25th violation.  (R&R at 35, AR 221).

GFX requested a hearing before an ALJ, and a hearing was held before ALJ Peter A. Fitzpatrick on October 4, 2005.  (R&R at 37; AR 223).  The ALJ concluded that NOAA had failed to establish that GFX maintained any false information in records that were required by law. (<u>Id.</u>).  NOAA appealed the ruling to the NOAA Administrator, Admiral Conrad C. Lautenbacher, Jr., who reinstated the charges and penalties against GFX, and remanded the case to an ALJ to determine the appropriate amount of penalties.  (R&R at 37-38, AR 223-34).  Since ALJ Fitzpatrick had retired, the matter was referred to ALJ Michael J. Devine, who issued a supplemental decision on November 14, 2008, as corrected on November 24, 2008.  (R&R at

38, AR 224).  Therein, ALJ Devine concluded that while NOAA had established the violation by a preponderance of the evidence, "such a large penalty as proposed in this case appears to exceed the level of violation within the limits of the facts and circumstances of this matter and it would be contrary to the interest of justice to impose a penalty that would essentially put a company out of business in a situation such as this."  (Id.; see also FAD at 4, AR 1288).  He also found the $120,000 penalty excessive on the basis that the prior violation should not be considered as 24 separate violations, and the violation "should not be magnified beyond its actual significance."  (R&R at 38, AR 224).  ALJ Devine reduced the penalty from $120,000 to $10,000 and reduced the permit sanction from 90 days to 20 days.  (Id.).

GFX appealed to a a new NOAA Administrator, Jane Lubchenco, who denied the appeal on April 1, 2009.  (Id.).  Thereafter, on April 30, 2009 GFX filed a timely appeal to the United States District Court, District of Massachusetts, and the case was assigned to Judge Woodlock. (Id.; FAD at 5, AR 1289).

2.  ALJ Brudzinski Proceeding

As detailed in the Special Master's R&R, beginning in early 2006, "around the time when ALJ Fitzpatrick issued the first decision against NOAA[,]" NOAA began a comprehensive investigation into GFX's business, including investigating fish size and landing limits relating to various types of catches.  (See R&R at 39; AR 225).  NOAA collected hundreds of thousands of documents, including obtaining computers and paper documents pursuant to an Administrative Inspection Warrant which was executed by 16 NOAA special agents, 5 MEP agents, and 1 ICE agent at GSX's facility on December 7, 2006.  (R&R at 40-45, AR 226-31).  Three NOAA Special Agents spent approximately 75% of their time working on the GSX investigation from December

[9]

2006 until May 16, 2008, when the final Offense Investigation Report was issued.  (R&R at 45, AR 231).  On February 13, 2009, NOAA issued a 59 count NOVA and NOPS amounting to a $355,200 penalty and a 120-day permit sanction.  (R&R at 49, AR 235).

GFX requested a hearing and ALJ Walter Brudzinski was assigned to hear the matter. (R&R at 51, AR 237).  Meanwhile, Judge Woodlock's case was pending, and on June 19, 2009, after informing the press, NOAA sought to enforce a ten day permit sanction against GFX on the basis that the present charged behavior violated the probation provisions of the September 11, 2003 settlement of the 2002 charges.  (Id.).  Judge Woodlock subsequently issued a preliminary injunction preventing the shut-down, concluding that the 10-day sanction would ultimately put GFX out of business.  (R&R at 52, AR 238).  A further hearing date was set before Judge Woodlock for March 1, 2010.  (Id.).

Meanwhile the litigation was pending before ALJ Brudzinski, and trial was set for March 2, 2010.  (FAD at 5, AR 1289).  GFX had filed multiple motions to continue the trial until after a Congressional Oversight Hearing was conducted in Gloucester concerning fisheries enforcement issues, but those motions were denied.  (Id.).  On March 1, 2010, NOAA and GFX entered into a Settlement Agreement settling the March 7, 2005 and February 13, 2009 NOVAs, as well as the claimed violation of the September 11, 2003 settlement agreement that formed the basis of the preliminary injunction.  (R&R at 52-53, AR 238-39).  The scheduled March 2, 2010 hearing before ALJ Brudzinski went forward so the parties could "state on the record that the parties did in fact achieve a settlement[.]"  (ALJ Brudzinski Hearing Transcript at 1-2, AR 860-61).  ALJ Brudzinski asked if GFX's counsel, was "satisfied, speaking on behalf of your client, that you've reached a full and fair settlement in this matter and that there's no need for any

further proceedings?" (ALJ Brudzinski Hearing Transcript at 3, AR 862). GFX's counsel

responded, "[t]hat's correct, your Honor." (Id.). ALJ Brudzinski dismissed the case pending

before him. (ALJ Brudzinski Hearing Transcript at 3-4, AR 862-63).

### The March 1, 2010 Settlement Agreement

The parties agreed that GFX would pay a $85,000 civil penalty and serve a 35-day

permit sanction. (Settlement Agreement at 1-2, AR 853-54). The Settlement Agreement

provides further in relevant part that

> [GFX] agrees to unconditionally release and hold harmless the United States of
> America . . . including . . . the United States Department of Commerce [and
> NOAA] . . . from any and all claims, demands, damages, causes of action or suit,
> of whatever kind or description and wheresoever situated, which might now or
> ever exist by reason of, or grow out of or affect, directly or indirectly, the
> investigation, seizure, or prosecution of all of the matters referred to in this
> agreement.

****

> [GFX] agrees that all rights of appeal of the matters resolved herein are hereby
> waived and each party shall bear any and all of its own fees and other expenses,
> including but not limited to attorneys fees, incurred by it in connection with each
> of the proceedings pertaining to these matters.

> [GFX] acknowledges that the provisions and the legal effects of this Agreement
> have been explained to [it], and that [it] is entering into this Agreement freely
> and voluntarily, without coercion, duress, or undue influence.

(Settlement Agreement at 3, AR 855). In addition, the Agreement provides that

> [t]he obligations set forth in this Agreement are severable and independent of
> one another in that the breach of one provision does not (unless expressly stated
> otherwise) extinguish any duties and rights set forth in any other provision of the
> Agreement. It is the intent of the parties that if it is determined that any portion
> of the Agreement is declared invalid, all other provisions shall remain in effect.

****

The terms of said agreement are contractual and may not be modified orally
except by a written instrument duly signed by each party.

(Settlement Agreement at 4, AR 856).  The Settlement Agreement was signed by both parties

on March 1, 2010 and became "effective as of the date it [was] signed by both" GFX and NOAA.

(Id.).

### September 2010 Inspector General Report and Secretarial Decision Memo

In September 2010, the Office of the Inspector General of the U.S. Department of

Commerce ("IG") issued a report presenting the results of its examination of twenty-seven

fishermen complaints alleging unfair treatment and overzealous enforcement by NOAA's Office

for Law Enforcement and Office of General Counsel for Enforcement Litigation.  (IG Report at 1,

AR 142).  The IG Report identified nineteen cases that would benefit from further review and an

"independent process for equitable relief or resolution of past enforcement cases meeting

appropriate eligibility criteria[.]"  (IG Report at 11, AR 152).

On September 23, 2010, then-Secretary of Commerce Gary Locke issued a secretarial

decision memorandum ("2010 SDM") establishing a process to review the penalties assessed in

the nineteen cases.  (2010 SDM, AR 177-82).  All of the cases arose from MSA violations, and

Secretary Locke noted that § 308(e) of the MSA "allows modification or remission of the

amount of any civil penalty imposed under the Act at any time, including after the penalty is

imposed."  (2010 SDM at 2, AR 178).  Secretary Locke acknowledged that there were safeguards

against overzealous enforcement, specifically the involvement of attorneys and the ability to

appeal, and that "the opportunity to re-open cases is rarely available and is reserved for serious

miscarriages of justice."  (2010 SDM at 3, AR 179).  Despite this, Secretary Locke concluded that

the perception of NOAA as arbitrary and abusive warranted further investigation into the identified cases.  (2010 SDM at 3-4, AR 179-80).

As noted above, Secretary Locke appointed the Honorable Charles B. Swartwood III as a Special Master.  The Special Master was tasked with investigating the cases and making recommendations regarding whether Secretary Locke, who retained ultimate authority and discretion, should modify or remit any of the penalties.  (2010 SDM at 4, AR 180; R&R at 1, AR 187; see FAD at 6, AR 1290).  The Special Master was directed to "identify those instances in which clear and convincing evidence establishes that NOAA enforcement personnel engaged in conduct that overstepped the bounds of propriety and fairness expected of them, and had a material impact on the outcome of the case."  (2010 SDM at 4, AR 180; see FAD at 6, AR 1290).

### R&R

In April 2011, Judge Swartwood issued his R&R outlining his findings, including his review of the enforcement actions against GFX.  (R&R at 1-236, AR 184-423; see FAD at 6, AR 1290).  Judge Swartwood expressly stated that his investigation was "not an adversarial proceeding."  (R&R at 9, AR 195).  Instead,

> Judge Swartwood explained his process for the review of cases, which involved reviewing the OIG investigative files, reviewing deposition transcripts of witnesses in cases filed with ALJs and District Courts and of OIG witnesses (including NOAA personnel), reviewing NOAA case files, and reviewing documents provided by the complainants in the matters under review (i.e. the parties who had been subject to civil penalties and NOPS). After reviewing documents, Judge Swartwood interviewed a number of individuals, including NOAA personnel, complainants, and witnesses with relevant information.

> Judge Swartwood stated explicitly that his investigation was "not an adversary adjudication," and further explained: "Although I may have prodded some interviewees for answers to specific questions, I treated these interviews as a quest for information in which I allowed each person interviewed to confirm and deny allegations of fact made by others."

[13]

(FAD at 6, AR 1290 (record citations omitted)).

Judge Swartwood found that GFX

"was the subject of selective enforcement by NOAA," and that there was "little .
. . credible evidence to demonstrate that (GFX) was engaged in any pattern of
intentional illegal behavior." He found that much of the evidence that formed
the basis of the investigation was "misleading," and the investigation itself
premised on "an unsubstantiated perception that (GFX) was engaged in a
pattern of illegal activity." He recommended that Secretary Locke "cancel all
future monetary obligations due from (GFX) in connection with the settlement
agreement," and "reimburse (GFX) for all payments made" towards the
settlement amount, minus the $10,000 judgment assessed by ALJ Devine in [the
ALJ Devine case]. He recommended that the sanction penalty from the
settlement agreement be vacated, and the original 20-day penalty sanction
imposed by ALJ Devine be reinstated as set forth in his decision, less any days
previously served since the date of the decision. He based his recommendation
on his assessment that GFX "was clearly the target of selective enforcement and
subject to excessive fines based on *de minimis*, self-reported violations," and his
determination that there was no evidence that GFX was willfully violating
fisheries regulations.

(FAD at 6-7, AR 1290-91) (record citations omitted)).

Judge Swartwood acknowledged that GFX sought an award of attorney's fees but

concluded that he lacked the "authority to award such fees."  (R&R at 62, AR 248; see FAD at 7,

AR 1291).  In particular, Judge Swartwood explained that

NOAA had no credible evidence that [GFX] was willfully violating fisheries
regulations.  However, [GFX] was subjected to lengthy proceedings to defend
itself and its employees for an amount exceeding $200,000 in legal fees.  [GFX]
and its counsel seek an award of attorney's fees in this proceeding.  I do not have
the authority to award such fees.  Pursuant to 5 U.S.C. §504(a)(4) (Equal Access
to Justice Act), such fees may be awarded, ". . . in an adversary adjudication
arising from an agency action to enforce a party's compliance with a statutory or
regulatory requirement. . ." However, this is not an adversary adjudication and
for that reason, the request is denied.

[14]

(R&R at 62, AR 248).[3]

## 2011 Secretarial Decision Memo and NOAA Letter

On May 17, 2011, Secretary Locke issued a secretarial decision memorandum ("2011 SDM"). (2011 SDM at 1-15, AR 424-38; see FAD at 7, AR 1291). As to GFX, Secretary Locke went beyond Judge Swartwood's recommendation that GFX be obligated for $10,000, and directed NOAA to cancel the entire $85,000 payment obligation and return the money GFX had already paid. (2011 SDM at 4-5, AR 427-28 (2011 SDM); see FAD at 7, AR 1291). Secretary Locke did not alter the permit sanctions on the grounds that the MSA "does not provide [the Secretary with] authority to modify or remit permit sanctions." (2011 SDM at 5 n.3, AR 428 n.3). He then directed that all officers of the Department of Commerce and NOAA "take all steps necessary to implement [his] decisions." (2011 SDM at 15, AR 438).

Consistent with Secretary Locke's direction, Under Secretary Lubchenco sent GFX a letter regarding permit sanctions ("NOAA letter"). (NOAA letter, AR 867; see FAD at 7, AR 1291)). The letter stated, in part, that

> [t]he March 1, 2020 settlement agreement that you entered into on behalf of your client resolved several pending cases and was a final resolution of those cases. It included a waiver of all claims against the government, and NOAA is not reopening that settlement agreement here. However, as to your client's compliance with the terms of the settlement agreement, and to meet the intention of the Secretary's Decision Memorandum, NOAA will forego requiring your client to serve the 15 permit sanction days that were not part of Judge

---

[3] Throughout their memos, GFX alleges that Judge Swartwood found that GFX had been coerced into settling its disputes with NOAA. However, the citations are to Judge Swartwood's findings with respect to Lawrence M. Yacubian, a retired fisherman with no apparent connection to GFX. (R&R at 122-32, AR 308-18). Specifically, Judge Swartwood found "by clear and convincing evidence that NOAA coerced a settlement with Mr. Yacubian by refusing to adhere to Judge Gorton's order and by seeking and relying on a questionable ruling by ALJ McKenna." (R&R at 132, AR 318). Judge Swartwood's investigation also yielded "credible evidence that money was NOAA's motivating objective" in Mr. Yacubian's case. (R&R at 129, AR 315). No such findings were made regarding GFX.

Devine's order reaffirmed by the Special Master. You will continue to be required to serve the remaining 20 days, minus the 5 days you have already served, as recommended by the Special Master.

This forebearance [sic] on one of the terms of the March 2010 settlement agreement is limited to this case, the only one of the cases investigated by the Special Master that had unserved permit sanction time.

(NOAA letter, AR 867).

### EAJA Application and Petition for Review

On June 15, 2011,[4] GFX applied for an award of $463,663.79 in fees and expenses it claims to have incurred in the proceedings. (EAJA Application at 1-11, AR 2-12; see FAD at 7, AR 1291). ALJs Devine and Brudzinski both denied the application on the grounds that the application before each of them was not timely in that it was filed more than 30 days after the March 1, 2010 Settlement Agreement. (ALJ Brudzinski Decision at 1, AR 1099; ALJ Devine Decision at 1, AR 1122). GFX then filed a petition for administrative review with the OGC. (FAD at 8, AR 1292).

### The FAD

On March 6, 2017, the OGC issued the FAD denying GFX's petition for review of the ALJ decisions denying the EAJA application. (FAD at 15, AR 1299) The OGC concluded, "that the parties' agreement to pay their own costs and fees, as set forth in the March 2010 settlement agreement, precludes GFX's request for attorney's fees and that GFX otherwise has failed to satisfy the elements of a claim under EAJA." (FAD at 2, AR 1286). Specifically, the OGC held that GFX was bound by its agreement to bear its own attorney's fees in the March 1, 2010

---

[4] GFX's fee application is dated June 15, 2010, (EAJA Application, AR 12), and that date is used in some of GFX's briefing. However, it is apparent that this is a typographical error, and that the fee application was made on June 15, 2011.

Settlement Agreement, and rejected GFX's argument "that either the original terms of the settlement agreement have been either amended or voided by the actions of the Secretary, or that the settlement agreement is void because GFX signed it under economic duress."  (FAD at 9, AR 1293).  Rather, the OGC concluded that the Settlement Agreement "remains in force and precludes GFX's request for attorney's fees."  (Id.).  In addition, the OGC concluded "that GFX is otherwise not a prevailing party to adversary adjudication for purposes of EAJA."  (FAD at 15, AR 1299).  The OGC advised GFX that it may seek judicial review of its decision pursuant to 5 U.S.C. § 504(c)(2) and 15 C.F.R. § 18.23.  (Id.).  GFX filed a timely "Petition for Review of Administrative Decision" (Docket No. 1).  Thereafter, NOAA filed its motion to affirm and GFX filed its motion for summary judgment.  (Docket Nos. 18, 20).  These motions are ripe for resolution.

Additional facts will be provided below where appropriate.

## IV. <u>ANALYSIS</u>

### A. <u>Standard of Review</u>

Under the EAJA, a court's review of an agency's decision relating to fees and expenses must be "based solely on the factual record made before the agency[,]" and the court may modify the agency's decision "only if the court finds that the failure to make an award of fees and other expenses, or the calculation of the amount of the award, was unsupported by substantial evidence."   5 U.S.C. § 504(c)(2).[5]  <u>See also</u> APA, 5 U.S.C. § 706(2)(E) (where court's review is limited to the agency record, court must determine if the agency decision is

---

[5] While NOAA originally suggested that an "abuse of discretion" standard should be applied, it subsequently agreed that the court must determine whether the agency's decision "was unsupported by substantial evidence." <u>See</u> Def. Opp. to Motion for Summary Judgment (Docket No. 23) at 1-2, & n. 1.

"unsupported by substantial evidence").  Thus, "[w]hile [GFX's] motion is styled as a summary

judgment motion, the familiar summary judgment standard does not apply because the

underlying action is in fact an appeal brought under the substantial evidence standard of the

federal Administrative Procedure Act[.]"  Frontier Fishing Corp. v. Evans, 429 F. Supp. 2d 316,

322 (D. Mass. 2006).  "Substantial evidence means 'more than a mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"

Visiting Nurse Ass'n Gregoria Auffant, Inc. v. Thompson, 447 F.3d 68, 72 (1st Cir. 2006) (quoting

Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971)).  With

respect to issues of law (such as whether a party is a prevailing party under the EAJA), however,

the court engages in a de novo review.  Aronov v. Napolitano, 562 F.3d 84, 88 (1st Cir. 2009).

**B.  GFX Does Not Qualify for Fees and Expenses Under EAJA**

As discussed infra, the parties raise a number of arguments relating to the OGC's

determination that the Settlement Agreement remained in full force and effect, and that GFX

was bound by its terms waiving its request for attorney's fees and expenses.  (See FAD at 9, AR

1293).  The OGC also determined that GFX was not a prevailing party to an adversary

adjudication for purposes of the EAJA, and, thus, does not qualify for attorney's fees under the

statute.  (See FAD at 15, AR 1299).  This court will address the latter ruling first and, for the

reasons explained herein, agrees that GFX does not qualify to be compensated under the

statute.

The EAJA waives sovereign immunity and "must be construed strictly in favor of the

government."  Aronov, 562 F. 3d at 88 (citation omitted).  "Whatever flexibility there may be in

interpreting fee shifting statutes involving awards against parties other than the United States,

such flexibility does not exist as to EAJA applications."  Id.  As described above, EAJA provides

that

> [a]n agency that conducts an adversary adjudication shall award, to a prevailing
> party other than the United States, fees and other expenses incurred by that
> party in connection with that proceeding, unless the adjudicative officer of the
> agency finds that the position of the agency was substantially justified or that
> special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).  It is undisputed that the underlying enforcement actions before ALJ Devine

and ALJ Brudzinski that resulted in the Settlement Agreement were adversary adjudications.

The issue is whether the subsequent proceedings initiated by the Department of Commerce

constituted adversary adjudications, and whether GFX qualified as a prevailing party.

The EAJA defines an "adversary adjudication" in relevant part as an administrative

adjudication under the APA, 5 U.S.C. § 554, "in which the position of the United States is

represented by counsel or otherwise . . . . "  5 U.S.C. § 504(b)(1)(C).  The Department of

Commerce EAJA regulations, which are applicable to NOAA, provide that "adversary

adjudications" under § 554 are those in which the agency's position "is presented by an

attorney or other representative who enters an appearance and participates in the

proceeding."  15 C.F.R. § 18.4(a).  The taking of evidence at hearings under § 554 must be

presided over by the agency, one or more members of the body which comprises the agency, or

one or more administrative law judges.  5 U.S.C. § 556(b).  Moreover, "[t]he legislative history

[of the EAJA] underscores Congress's determination that, as respects administrative

proceedings in which the government does not appear in an adversary role, sovereign

immunity remains intact."  In re Perry, 882 F.2d 534, 539 (1st Cir. 1989).

In the instant case, Secretary Locke did not preside over a § 554 adversary proceeding when he appointed a private party to conduct an investigation into a number of NOAA enforcement proceedings, and to make recommendations whether to modify or remit any penalties that had been assessed.  The Special Master appointed by Secretary Locke emphasized that he was not conducting an adversary proceeding.  In fact, the Special Master found:

> [s]ince this was not an adversarial proceeding in the classic sense, where each of the witnesses would be subject to direct and cross-examination before a finder of fact, there were many instances where I could not conclusively verify which version of certain conversations or events were more likely true than not true.

(R&R at 9, AR 195).

The government did not appear in an adversarial role or conduct any examinations of any witnesses.  Similarly, in reviewing the Special Master's recommendations, Secretary Locke did not conduct an adversarial proceedings or provide a role for government representation. Pursuant to § 308(e) of the MSA, Secretary Locke was not required to conduct an adversary adjudication to remit penalties.  See 16 U.S.C. § 1858(e).  In sum, since the "proceeding" which resulted in the cancellation of the financial penalties assessed against GFX was not an adversary adjudication under the EAJA, GFX is not entitled to recover under the EAJA.

This conclusion is buttressed by the cases addressing the definition of "prevailing party" in suits for fees against the United States.  A prevailing party is, "a legal term of art" which denotes a party that "has been awarded some relief by the court."  Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 603, 121 S. Ct. 1835, 1839, 149 L. Ed. 2d 855 (2001).  The prevailing party must show a "material alternation of the legal relationship of the parties" and a "judicial imprimatur on the change." Aronov, 562 F.3d at

89 (citing Buckhannon, 532 U.S. at 604-05, 121 S. Ct. at 1840).  "In addition to judgments on the merits[,]" which does not apply here, "settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees."  Buckhannon, 532 U.S. at 604, 121 S. Ct. at 1840 (noting private settlements do not have "judicial approval and oversight").  The First Circuit has expanded "consent decrees" to include their functional equivalent but still requires sufficient judicial imprimatur.  Aronov, 562 F.3d at 92 (finding insufficient judicial imprimatur because the court did not resolve the dispute, evaluate the merits, or retain future enforcement jurisdiction).

In the instant case, the March 1, 2010 Settlement Agreement was signed and went into effect without any involvement from the court, and therefore cannot serve as a basis of establishing GFX's status as a prevailing party.  While the Secretary did modify GFX's penalties, the change did not come in the context of an adversary proceeding.  As detailed above, the Special Master's proceedings were not adversarial proceedings, and NOAA was not represented.  Similarly, NOAA did not have the opportunity, in an adversarial setting, to challenge the decision to remit the penalties.  Absent judicial approval of the reduction in penalties, there is no basis for finding GFX a prevailing party under EAJA.

### C.  The Enforcement Proceedings Were Not "Reopened"

GFX repeatedly argues that Secretary Locke's actions and the Special Master proceedings "re-opened" the original enforcement proceedings.  This argument arises in several contexts.  Thus, GFX contends that since the proceedings were "re-opened," the Secretary's decision cancelling the penalties was the culmination of the proceedings and the "judicial imprimatur" that entitled it to compensation as a prevailing party under the EAJA.  In

addition, if the proceedings were "re-opened," and not concluded until Secretary Locke's order, then the EAJA applications were timely.  Finally, if the actions were "re-opened," according to GFX, then it is not bound by the terms of its Settlement Agreement waiving any claim to attorney's fees and expenses.

The parties raise a number of arguments as to whether the Secretary had the authority to "re-open" the adjudicatory proceedings.  While these will be addressed, at least briefly, herein, the record is clear that there was no intent on the part of the Secretary to do so, and the proceedings were not re-opened.  The directive to the Special Master was to provide recommendations as to whether any civil penalties should be modified or remitted, not whether any proceedings should be re-opened.  (See 2010 SDM at 1, AR 177).  The Secretary made it clear that the appointment of the Special Master was part of ongoing efforts "to increase transparency and accountability[,]" and was designed "to help [the] new leadership wipe the slate clean of past practices identified by the Inspector General that are incompatible with these high standards [of professional and ethical conduct adhered to by most law enforcement professionals at the agencies] and with the standards [the Secretary expects] of law enforcement officers."  (Id.).  The appointment of the Special Master was being made pursuant to § 308(e) of the MSA, which, according to the Secretary, "allows modification or remission of the amount of any civil penalty imposed under the Act at any time, including after the penalty is imposed, on [the Secretary's] own initiative."  (2010 SDM at 2, AR 178).  Thus, the Secretary recognized that he was not proceeding pursuant to any specific "re-opened" enforcement proceeding.  Finally, Secretary Locke authorized the Special Master to review files "and conduct such other interviews and investigation as he sees fit."  (2010 SDM at 5, AR 181).

[22]

It is clear, however, that Secretary Locke did not envision that the Special Master would take evidence under oath, allow cross-examination of witnesses, or otherwise "re-open" an adjudicatory proceeding.

Judge Swartwood also made it clear that his findings did not constitute adjudicatory rulings, and that he did not conduct adversary proceedings.  (See R&R at 9, AR 195). Thereafter, in his 2011 SDM, Secretary Locke remitted the penalties assessed, but ruled that he did not have the authority to modify permit sanctions, so he was not implementing Judge Swartwood's recommendation regarding such sanctions.  (2011 SDM at 5, AR 428).  He did "direct NOAA to disregard this permit sanction when assessing penalties for any *future* violations by this company."  (Id. (emphasis added)).  Notably, Secretary Locke did not ask that NOAA reopen the underlying proceedings.  In light of these facts, it is impossible to find that Secretary Locke "re-opened" any of the proceedings investigated by the Special Master, even assuming, arguendo, that the Secretary had the authority to do so.[6]  Consequently, and for the reasons stated above, GFX cannot be considered a prevailing party under EAJA,.  The defendant's motion should be allowed, and plaintiff's motion should be denied.

---

[6] Before the OGC, GFX apparently cited (in a footnote) to Secretary Locke's statement in his 2010 SDM that "[o]nce the legal process has run its course, the opportunity to re-open cases is rarely available and is reserved for serious miscarriages of justice[,]" and requested discovery about what was meant by "re-open."  (See FAD at 12 & n. 13, AR 1296 (citing AR 179)).  The OGC ruled that no discovery was needed "as the Secretary lacks the statutory authority to re-open an adversary adjudication."  (Id.).  Even if the Secretary did have such authority, however, no discovery would be appropriate.  The statement does not say that the Secretary is re-opening any investigation, and, taken in context, appears to state that the investigation he is ordering is outside the judicial process (where "finality is an essential tenet") and is being undertaken to help restore confidence in the system.  (See 2010 SDM at 2-4, AR 178-80).  As detailed above, the actions ordered by Secretary Locke, including the appointment of a Special Master to conduct proceedings outside of the adjudicatory process, make it clear that he was not "re-opening" the docket on specific cases.

While not necessary for this court's analysis, since the parties and the OGC did address the authority of the Secretary to "re-open" cases, this court will do so as well.  For the reasons detailed herein, this court concludes that the OGC's determination that the Secretary lacked authority to reopen GFX's hearings is supported by the record and entitled to deference.

### The FAD Ruling

The OGC rejected GFX's argument that the underlying adversary adjudications had been reopened as a result of the actions of the Special Master or Secretary Locke for various reasons, including that Secretary Locke lacked the statutory authority to do so.  (FAD at 12-13, AR 1296-97).  The OGC relied on the language of § 308(e) that grants the Secretary the power to "compromise, modify, or remit, with or without conditions, any civil penalty which is subject to imposition or which has been imposed under this section."  16 U.S.C. § 1858(e).  The OGC held that the absence of any reference to the authority to re-open any adjudicatory proceeding was significant, especially since the Secretary could "compromise, modify, or remit" a civil penalty even if it had not yet been imposed.  (FAD at 12-13, AR 1296-97).  Thus, according to the OGC, the statutory language establishes that the Secretary's authority "is not necessarily tied to or impacted by administrative proceedings."  (FAD at 13, AR 1297).  In addition, as the OGC concluded, the Secretary did not have the authority to "compromise, modify, or remit" any permit sanctions, which are treated separately under 16 U.S.C. § 1858(g).  (See id.).  The absence of this authority, according to the OGC, is further evidence of the Secretary's lack of authority to re-open the proceedings.  (See id.).  As the OGC wrote

> Secretary Locke acknowledged the limitation on his powers to modify sanctions in the May 2011 SDM, and, unable to modify the existing permit sanctions, merely directed NOAA to disregard the permit sanctions when assessing penalties for any further violations. Under Secretary Lubchenco's letter to GFX's

counsel modifying the permit sanctions stated that the action was "to meet the intention" of the Secretary's SDM; however, the letter also emphasized that NOAA still considered the settlement agreement to be the final resolution of the cases involving GFX, and that NOAA was not reopening the settlement agreement, including the waiver of all claims against the government.

The civil penalties modified by a Secretary need not be connected with an administrative action, and a Secretary may not modify permit sanctions—taken together, the power of the Secretary under section 308(e) is limited and does not imply the power to "re-open" an existing administrative action. Calling the action taken by the Secretary "re-opening" has no power to make it so, as the Secretary lacks such statutory authority.  Therefore, the Secretary's actions in September 2010-May 2011, including appointment of the Special Master and the modification of the existing civil penalties, did not "re-open" the administrative actions in a way that would either allow GFX to be considered a "prevailing party" to those underlying actions, or allow for GFX to count the thirty-day filing period for EAJA from the May 2011 SDM.

(Id. (record citations omitted)).

Without much analysis, the parties agree that the Agency's interpretation of its statutory power is entitled to deference under Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984).  See Def. Opp. (Docket No. 23) at 8 (Agency's reasonable interpretation of MSA that Secretary lacks authority to re-open administrative proceeding "is entitled to Chevron deference and should not be disturbed."); Pl.'s Reply to Gov't Opp. to Pl.'s Cross Motion for Summ. Judgment (Docket No. 29) at 10 ("[t]he agencies' interpretations of the MSA may be treated within the familiar framework set forth in Chevron[.]").[7]  NOAA contends that the Agency's interpretation of § 308 is reasonable, while GFX argues that § 308(e), granting the Secretary the authority "to compromise, modify, or

---

[7] The parties do not discuss whether the deference standard set forth in Chevron, as opposed to the lesser standard of Skidmore v. Swift & Co., 323 U.S. 134, 65 S. Ct. 161, 89 L. Ed. 124 (1944), should be apply.  Skidmore is applicable "where an agency's interpretation is announced in a manner that lacks the force of law[.]"  Lovgren v. Locke, 701 F.3d 5, 30 (1st Cir. 2012).  Under the Skidmore standard, agency interpretations "are accorded deference in proportion to their power to persuade."  Id. (internal quotations omitted).  This court's conclusion would be the same regardless of the standard applied.

remit, with or without conditions, any civil penalty" expresses the "unambiguous" intent of Congress that the Secretary "may, *as Secretary Locke undertook in this case*, re-open and reconsider all civil penalties (up to and including total remission of all penalties without conditions) arising from adversary adjudications[.]"  (Docket No. 29 at 11) (emphasis added).

Not only does GFX's statutory interpretation expand the language of § 308 without justification, but GFX also misconstrues what the Secretary did in this case.  For all the reasons discussed above, Secretary Lock did not "re-open" the adversary adjudications.

As the First Circuit has explained:

[A court's] analysis of an agency's interpretation of a statute proceeds in three stages. First, we assess the statutory text to determine whether Congress has directly spoken to the precise question at issue.  If so, courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  Second, if Congress's intent is uncertain, we decide whether and to what extent the agency's interpretation is entitled to deference.  Finally, we evaluate the agency's interpretation under the governing standard to determine whether it exceeds the bounds of the permissible.

Lovgren v. Locke, 701 F.3d 5, 21 (1st Cir. 2012) (internal quotations, citations and parentheticals omitted).  Under Chevron, an agency's interpretation is entitled to deference "so long as it is reasonable."  Id. at 30.

In the instant case, Congress has not expressly addressed the question whether the Secretary may "re-open" an adjudicatory proceeding.  Nor has Congress expressly stated what happens to the remaining portion of a settlement agreement when a Secretary alters a civil penalty.  However, contrary to GFX's contention, it is clear that under the statutory scheme the Secretary may modify a civil penalty without affecting other aspects of an enforcement order. The text of MSA § 308 supports the Department of Commerce's interpretation that the power given to the Secretary is limited and does not formally "re-open" an adversary adjudication.

Without belaboring the point, a party in violation of the Act may receive either civil penalties or permit sanctions, or a combination of both.  Civil penalties, as used in this statute, refer to financial penalties.  See 16 U.S.C. § 1858(a) ("The amount of the civil penalty shall not exceed $100,000 for each violation").  Section 308(e) allows the Secretary to "compromise, modify, or remit, with or without conditions, any civil penalty which is subject to imposition or which has been imposed under this section."  16 U.S.C. § 1858(e).  The statute does not grant the Secretary similar authority under the section pertaining to permit sanctions.  See 16 U.S.C. § 1858(g).  However, the statute does specifically provide that courts may review both civil penalties and permit sanctions.  16 U.S.C. § 1858(b) ("Any person against whom a civil penalty is assessed under subsection (a) or against whom a permit sanction is imposed under subsection (g) . . . may obtain review thereof in the United States district court. . . .").  "Under traditional rules of statutory construction, 'identical words used in different parts of the same (A)ct are intended to have the same meaning.'"  Lovgren, 701 F.3d at 26 (quoting Dep't of Revenue of Or. v. ACF Indus., Inc., 510 U.S. 332, 342, 114 S. Ct. 843, 845, 127 L. Ed. 2d 165 (1994) (additional citations omitted)).  A fair reading of the statute limits the Secretary's authority to modifying civil penalties.

As detailed above, the Secretary's exercise of this authority is also not linked to an administrative adjudication. Thus, the Secretary may modify a civil penalty that is either "subject to imposition or . . . has been imposed."  16 U.S.C. § 1858(e).  Regulations promulgated pursuant to the MSA, allow NOAA to compromise, modify, remit, or mitigate "any civil penalty assessed, or which is subject to assessment" (with exceptions not relevant here), and this "compromise authority" may be exercised on NOAA's own initiative or in response to a request.

[27]

See 15 C.F.R. §§ 904.106(a), (b).  NOAA regulations further provide that "[n]either the existence

of the compromise authority of NOAA under this section nor NOAA's exercise thereof at any

time changes the date upon which a NOVA becomes final."  15 C.F.R. § 904.106(c).  OGC's

interpretation that the Secretary's power is limited to altering the civil penalty, and that the

Secretary could and did proceed without "re-opening" the enforcement proceedings against

GFX is reasonable and aligns with the text of the statute.

In sum, since the Secretary's actions did not re-open the underlying enforcement

actions, and since neither the Special Master nor the Secretary conducted adversarial

proceedings, GFX does not qualify as a prevailing party under EAJA.

### D.  The Settlement Agreement Is Not Null and Void

The OGC concluded that GFX was bound by the terms of the Settlement Agreement in

which it waived its claim for attorney's fees and released NOAA from all claims.  (FAD at 9, AR

1293).  Again, this court does not need to reach this issue, since GFX does not qualify as a

prevailing party under EAJA.  If the court were to reach this issue, however, this court agrees

with the OGC's ruling that the terms of the Settlement Agreement, other than the penalties,

remain in full force and effect.

GFX argues that

[t]he settlement agreement between GFX and NOAA was signed by GFX [under] .
. . economically coercive and unfounded enforcement action conditions, and the
affirmative contract law defense of economic coercion and duress voids said
agreement *ab initio*. NOAA is thus precluded from relying upon the attorneys'
fees provision of the agreement, even if severable from the settlement
agreement as a whole in the context of a settlement agreement that was not
entirely void *ab initio*.

(Docket No. 21 at 20).[8]  According to GFX, Judge Swartwood expressly found "'by clear and

convincing evidence that NOAA coerced a settlement' from GFX."  (Docket No. 21 at 19

(quoting R&R at 132, AR 318)).  However, Judge Swartwood made no such finding with respect

to GFX, and the citations are to Judge Swartwood's discussion of a completely unrelated

matter.  See supra note 3.  In fact, the Special Master made no findings at all regarding the

voluntariness of the Settlement Agreement.

By its terms, the Settlement Agreement's provisions are severable, and NOAA made it

clear that it was not negating any provisions of the Settlement Agreement other than those

relating to the penalties imposed.  (See Settlement Agreement at 4, AR 856; NOAA letter, AR

867).  The Settlement Agreement further provides that it was being entered into voluntarily by

GFX, and GFX was represented by counsel in connection with its negotiation.  (Settlement

Agreement at 1-4, AR 853-56).  There is nothing in the record which establishes that the

Settlement Agreement should be voided due to economic duress.

More importantly for present purposes, however, is the fact that there is no challenge

to the validity of the Settlement Agreement before the court in this appeal from the denial of

the EAJA applications.  As the OGC found in the FAD:

> leaving aside the question whether the record establishes a legal basis to set
> aside the settlement agreement [for economic coercion], this office lacks the

---

[8] First in a footnote, and then in a reply brief, NOAA argues that this court has no jurisdiction over this claim since the Tucker Act, 28 U.S.C. §§ 1346 & 1491 confers exclusive jurisdiction in the United States Court of Federal Claims for monetary claims against the United States exceeding $10,000.  (See Docket No. 19 at 19 n. 9; Docket No. 23 at 3-4).  "The jurisdiction of the district courts is limited to claims for money damages 'not exceeding $10,000 in amount'" and the district court cannot hear claims against the United States that seek primarily equitable relief. Berman v. United States, 264 F.3d 16, 21 (1st Cir. 2001) (citations omitted).  "The Tucker Act is displaced, however, when a law assertedly imposing monetary liability on the United States contains its own judicial remedies."  United States v. Bormes, 568 U.S. 6, 12, 133 S. Ct. 12, 18, 184 L. Ed. 2d 317 (2012). Here, § 308 of the MSA is such a law as it affords any person sanctioned with either a civil penalty or a permit sanction a right of review in the United States District Court. 16 U.S.C. § 1858(b).

authority to consider a legal challenge to the validity of the settlement
agreement in the context of deciding a petition under the EAJA. The EAJA affords
prevailing parties in adversary adjudications the opportunity to recoup
attorneys' fees. However, this office's inquiry is limited to determining whether
an applicant fulfills the statute's requirements for eligibility; it does not provide
an applicant with an opportunity to raise new claims or re-litigate others. 5
U.S.C. §504(a)(1). Thus, my authority under [1]5 C.F.R. § 18.22 is limited to
considering, in the first instance, whether an applicant was a prevailing party in
an adversary adjudication and, if so, to reviewing the amount of attorneys' fees.
It is not to review whether GFX may set aside the settlement agreement that
resolved its adjudicatory proceeding under the Magnuson-Stevens Act.

(FAD at 11-12, AR 1295-96).  As made clear in EAJA, the merits of the case are decided

separately from the fee application.  See 5 U.S.C. § 504(a)(2) ("When the United States appeals

the underlying merits of an adversary adjudication, no decision on an application for fees and

other expenses in connection with that adversary adjudication shall be made under this section

until a final and unreviewable decision is rendered by the court on the appeal or until the

underlying merits of the case have been finally determined pursuant to the appeal.").[9]

Under EAJA, a party may apply for fees and expenses after "a final disposition in the

adversary adjudication."  5 U.S.C. § 504(a)(2).  Further, this court "may modify the

determination of fees and other expenses only if the court finds that the failure to make an

award . . . was unsupported by substantial evidence."  5 U.S.C. § 504(c)(2).  The finality of the

disposition of the case required for an EAJA application, and the limited review of an

application by this court, establishes that the validity of the Settlement Agreement cannot be

adjudicated in the instant EAJA appeal.

---

[9] Further, GFX stated before this court during oral argument that it was not seeking to have this court
review the underlying merits.

**E.  The EAJA Applications Were Not Timely**

Both ALJs determined that GFX's EAJA applications were not timely.  They were due within 30 days of a final disposition in the adversary adjudication.  5 U.S.C. § 504(a)(2).  For all the reasons detailed above, the independent review of NOAA by Secretary Locke and the Special Master did not re-open the underlying adjudicatory proceedings.  Similarly, NOAA regulations provide that even if NOAA exercises its authority to compromise a civil penalty, such action does not change the date the NOVA becomes final.  15 C.F.R. § 904.106(c).  Therefore, the EAJA applications were not timely.

**F.  EAJA Application Under § 504(a)(4)**

EAJA allows for the recovery of attorneys fees and expenses, even in the absence of prevailing party status if, "in an adversary adjudication arising from an agency action to enforce a party's compliance with a statutory or regulatory requirement, the demand by the agency is substantially in excess of the decision of the adjudicative officer and is unreasonable when compared with such decision. . . ."  5 U.S.C. § 504(a)(4).

GFX argues that it is entitled to attorney's fees because, "NOAA's initial combined penalty assessments totaling $475,000 were substantially and unreasonably in excess of the final judgment obtained- $0.00."  (Docket No. 21 at 16).  NOAA argues that adjudicative officers presiding over the adversary adjudications were ALJs Devine and Brudzinski -- neither of whom ordered a $0.00 final judgment.  (Docket No. 23 at 11-12).  As to this provision, the OGC noted in the FAD that even assuming the GFX had not agreed to bear its own attorney's fees in the Settlement Agreement, a § 504(a)(4) application would be untimely.  (See FAD at 14 n. 15, AR 1298 n.15).

For the reasons detailed above, GFX's argument must fail because the decision reducing the civil penalties to zero was not made in an adversary adjudication.  Moreover, this court notes that to the extent that GFX could have been eligible for fees in connection with ALJ Devine's reduction of its civil penalty from $120,000 to $10,000, it elected not to pursue a fee application but to settle its claim.  Moreover, any claim for fees under § 504(a)(4) was also untimely.  Therefore, GFX is not entitled to fees under this provision either.

### G.  Estoppel

GFX argues in passing that "[a]s a result of its affirmative misconduct, the Agency should also be estopped from arguing the application was untimely or otherwise defective."  (Docket No. 21 at 18).  This conclusory statement is not sufficient to challenge the decision in the FAD that neither equitable tolling nor equitable estoppel is applicable here.  (See FAD at 13-15, AR 1297-99).  Moreover, as stated in the FAD, even if equitable tolling applied to extend the time for the EAJA applications, GFX would still not be a "prevailing party" entitled to fees.  (FAD at 14, AR 1298).  Similarly, as the OGC ruled, "GFX does not recite the elements of equitable estoppel in its petition, nor does it identify any facts to correspond with those elements.  GFX does not indicate what facts it reasonably relied upon to its detriment.  Therefore, GFX's claim to equitable estoppel necessarily fails."  (FAD at 15, AR 1299).

### V.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that, "Defendant's Motion to Affirm Final Decision Denying Plaintiff's Application for Attorney's Fees, or, in the Alternative, for Remand" (Docket No. 18) be

**ALLOWED** in that the FAD should be affirmed, and "Plaintiff [GFX's] Motion for Summary Judgment" (Docket No. 20) should be **DENIED**. [10]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[10] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).